**Earlean McCORMICK, Plaintiff,**

v.

**ATTALA COUNTY BOARD OF EDUCA-
TION et al., Defendants.**

**No. EC 74-94-K.**

United States District Court,
N. D. Mississippi, E. D.

Dec. 29, 1976.

James O. Ford, Tupelo, Miss., for plaintiff.

William R. Ford, Kosciusko, Miss., for defendants.

## MEMORANDUM OPINION

KEADY, Chief Judge.

Upon plaintiff's appeal from our initial ruling, *McCormick v. Attala County Board of Education*, D.C., 407 F.Supp. 586, the Fifth Circuit vacated our prior order and remanded the cause to determine whether the school board's racially discriminatory policy of hiring or replacing black teachers

with black teachers and white teachers with white teachers, insofar as plaintiff, a black non-rehired teacher, has been thereby affected, entitled the plaintiff to back pay and reinstatement or if such unusual circumstances were present to relieve the defendant school board from liability for failing to consider plaintiff for reemployment, apart from the admitted continuance of the stated discriminatory hiring policy after the school district had successfully achieved a unitary school system. *McCormick v. Attala County Board of Education*, 541 F.2d 1094, (5 Cir. 1976).

In its ruling the Fifth Circuit held that a public employee who is a discriminatee of an unconstitutional policy is presumptively entitled to appropriate relief, and "the burden of proof then shifts to the employer to show by clear and convincing evidence that the discriminatee would not have been hired absent discrimination." If this burden is not met by the employer, back pay must be awarded unless special circumstances are present. At p. 1095. We are instructed that this result obtains no less in actions based on 42 U.S.C. §§ 1981 and 1983 than if based on Title VII. *Mims v. Wilson*, 514 F.2d 106, 109 (5 Cir. 1975).[1]

The Fifth Circuit expressly overruled our holding that immediate relief was not mandated since the defendant school officials had misconceived settled case law and were unaware that, once a unitary school system was established, faculty members were to be chosen, not in accordance with fixed racial ratios, but on the basis of "non-discriminatory application of objective merit standards in the selection and composition of faculty and staff." *Carter v. West Feliciana Parish School Board*, 432 F.2d 875 (5 Cir. 1970); *Lee v. Macon County Board of Education*, 483 F.2d 242 (5 Cir. 1973). Cf. *Pickens v. Okolona Municipal Separate*

*School District*, 380 F.Supp. 1036 (N.D.Miss. 1974). Also, good faith on the part of a school board in continuing to apply a fixed ratio policy was insufficient reason to excuse the school officials from hiring in accordance with nondiscriminatory, objective merit standards, irrespective of race.

It should be observed that no appeal was taken from our holding that at the time of Ms. McCormick's nonrehire for the 1973–74 school year, the Attala County public schools had successfully desegregated and had achieved a unitary status, and consequently plaintiff could not claim special protection provided by the employment strictures mandated by *Singleton v. Jackson Municipal Separate School District*, 419 F.2d 1211 (5 Cir. 1970) (en banc).[2] In other words, plaintiff's present rights are based, not on the status of a *Singleton*-protected teacher, but because she was not considered for reemployment solely because of race. In our prior opinion, the evidentiary details of which need not be reiterated here, it was made clear that plaintiff was not rehired at the end of the 1972–73 school year as a member of the faculty of the McAdams Attendance Center because of staff reduction, a circumstance wholly unrelated to consequences resulting from the desegregation of the county's public schools. Additionally, we found that the plaintiff was advised by the school superintendent, first at the board's administrative hearing and later by his testimony in court, that she would be given first preference for the next "black" vacancy in the social studies field occurring at any school in the county, 407 F.Supp. at 593. At our first hearing in January 1976, it was established that no "black" teacher vacancy had occurred in the social studies field since plaintiff applied for reemployment in May 1974, although

---

1. In our order of January 16, 1976, plaintiff was granted declaratory relief striking down the impermissible hiring policy, but the court denied back pay and reinstatement, declaring that plaintiff's application for reemployment (for 1976–77) must be considered on the basis of objective merit standards, and not in accordance with fixed racial hiring ratio. Thus, we did not dismiss the case but remanded it to the

docket for such supplemental proceedings as plaintiff might initiate within twelve months from the date of our order.

2. Although the school board had in fact failed to adopt objective criteria required by *Singleton*, no teacher had been dismissed or demoted during the process of desegregation.

several "white" positions had become vacant and were filled by white applicants.[3]

 As directed by the Fifth Circuit, the district court conducted a further evidentiary hearing on December 29, 1976, at which time Ms. McCormick, the plaintiff, and Superintendent Foster were the only witnesses. As stated, the burden was upon the school officials to show by clear and convincing evidence that Ms. McCormick, as discriminatee under an impermissible hiring policy, would not have been hired, absent the discrimination. The evidence presented at this hearing, taken with the concessions by defendants in earlier testimony, failed to convince the court that legally cognizable "special circumstances" existed which defeated plaintiff's claim to back pay and injunctive relief, at least to the extent hereinafter granted. Indeed, we reaffirm that Ms. McCormick, after her application for reemployment was filed in May 1974, was not rehired in later years only because there were no vacancies in the so-called "black" positions in the social studies field. The white applicants employed in preference to Ms. McCormick were no more qualified, if indeed their qualifications equalled hers, when judged by nondiscriminatory and objective merit standards, irrespective of race. Unquestionably plaintiff was competent to be considered for reemployment on the basis of objective standards; she was not disqualified, for any reason, from being so considered.

 Defendants urge that until a federal court formally adjudicated that the Attala County public schools had achieved a unitary status, it would have no means of knowing that it was under a constitutional obligation to abandon the fixed hiring ratio mandated by *Singleton* and to commence employing teachers, irrespective of race, solely on the basis of nondiscriminatory and objective merit standards. This argument must fail for the case law is well settled

that, after a period of three years of desegregation, a unitary school system is established, absent unusual events which might deter successful fulfillment. *U. S. v. Texas,* 509 F.2d 192 (5 Cir. 1975); *Lemon v. Bossier Parish School Board,* 444 F.2d 1400 (5 Cir. 1971). See also *Pickens v. Okolona, supra.* Obstacles to effective desegregation *within* a period of three years experience were found to exist in *Keglar v. East Tallahatchie School District,* 378 F.Supp. 1269 (N.D. Miss.1974), and *U. S. v. Coffeeville Consolidated School District,* 365 F.Supp. 990 (N.D. Miss.1973). No such frustrations occurred in Attala County, a fact which was well known to the local school officials. It logically follows as a conclusion which ought to be known *to school officials everywhere*— that *Singleton's* strictures cease upon the accomplishment of full desegregation within a minimal three-year period established by federal courts, absent complicating factors. A formal adjudication by a federal court is unnecessary to establish what is a reality. Should school officials be in real doubt as to whether the progress of desegregation has been completed, they have ready means for removing such doubts upon application to the court. See *U. S. v. Corinth Municipal Separate School District,* 414 F.Supp. 1336 (N.D.Miss.1976). It is equally well established that once *Singleton's* strictures are removed, the employment rights of a public school teacher in Mississippi are to be measured by general principles of contract and state law, subject only to constitutional imperatives. *McLaurin v. Columbia Municipal Separate School District,* 478 F.2d 348 (5 Cir. 1973); *Thompson v. Madison County Board of Education,* 476 F.2d 676 (5 Cir. 1973). Obedient to the Fifth Circuit's mandate, we are constrained to assess the board with liability for applying to Ms. McCormick an unconstitutional school hiring policy of replacing black teachers with black teachers and white

---

**3.** In our prior opinion we stated: "Since a much greater turnover has occurred among white teachers than among blacks, more white replacement teachers are being annually hired. The superintendent has stated his belief that the board's policy [maintaining a fixed hiring ratio] was promulgated under the impression that it was in compliance with, if not required by, *Singleton's* standard faculty provisions incorporated in this court's order of August 7, 1970." 407 F.Supp. at 593.

teachers with white teachers, notwithstanding the fact that the Attala County public schools had become effectually desegregated at the time of her nonrehire.

There remains only for the court to determine the amount of back pay and injunctive relief awardable to plaintiff.

■ The undisputed facts show that after plaintiff was not rehired for the scholastic year 1973–74, she sought employment elsewhere both as a teacher and otherwise, she solicited and was given favorable recommendations by Superintendent Foster to other school districts; but she did not file an application for reemployment with the defendant school board until May 1974. Plaintiff nevertheless contends that she is entitled to receive back pay for the year 1973–74 which would have amounted to $6,800 had she been continued uninterruptedly as a faculty member at McAdams Attendance Center. Plaintiff seeks to justify the late filing of her application for employment by stating that she relied upon having executed in March 1973 a letter of intent circulated to all teachers by the McAdams Attendance Center principal, by which she manifested a desire for continued employment, and that since 1969, the first year of her employment by the Attala County schools, plaintiff had not annually filed employment applications but instead had each year signed twelve-months contracts of employment, which in some years had been preceded by letter of intent but not in other years. Plaintiff further claims that she was excused from applying for reemployment because of the position taken by Superintendent Foster at the administrative board hearing that she would be given first preference in any vacancy occurring in the social studies field. The court rejects plaintiff's contentions on the ground that she could not rely on any inference of continued employment after she was advised by Principal Tollison in April 1973—a month after the letter of intent was executed—that his faculty would have to be reduced by a certain number and that she would not be recommended for continued employment. At the time of the school board hearing, plaintiff was aware of the fact that she was not being rehired for 1973–74, and the superintendent's statement that she would be considered for preference employment necessarily related to any future vacancies. In our opinion this would not relieve her, if she wished to be actively considered for reemployment by the Attala public schools, from duly filing an application for employment. This she did commencing in May 1974 and she consistently filed employment applications annually thereafter. Thus, plaintiff's failure to file timely application for reemployment bars her right to back pay for the scholastic year 1973–74. Plaintiff was, in fact, unsuccessful in locating employment either as a teacher or otherwise during that particular year; instead she attended Mississippi State University, matriculating September 19, 1974, and obtained a master's degree the following summer.

With her application on file as of May 1974, and renewed annually thereafter, the board was required to consider her application on the basis of nondiscriminatory, objective merit standards and it admittedly failed to do so by employing white applicants no more qualified than plaintiff in the field for which she was certified to teach. Thus, plaintiff is entitled to receive back pay for the ensuing school years commencing September 1974 to date, reduced by her earnings in other employment during the stated period.

■ The proof is undisputed that if plaintiff had been reemployed by defendants she would have earned $7,928 for the school year 1974–75, $9,475 for the school year 1975–76, and $9,700 for the current school year 1976–77, resulting in total earnings of $27,103. The evidence shows that plaintiff had total earnings of $16,800 during the three stated school years in other employment. In 1974–75 she was employed at Hernando Attendance Center, receiving $8,110; in 1975–76, despite diligent efforts, she was unable to obtain employment as a teacher or otherwise and had no income; for the present school year she is employed at the Holly Springs public school district at a salary of $7,898. After deducting the

total sums earned by plaintiff during the interim period, defendant school board owes her back pay in the net amount of $11,095.

In addition to back pay, the evidence shows that plaintiff incurred special, incidental losses or expenses aggregating $1,700 in being required to work away from her home at Kosciusko; that these losses, during the two years she was employed at Hernando and Holly Springs, resulted from her having to incur room rent and cost of week-end travel; also, she incurred travel expense in unsuccessfully seeking employment at Jackson and other towns in the state. Had plaintiff been employed by defendants during this period of time she would have avoided such expenses by residing in her home at Kosciusko with her husband, who was himself employed as a public school teacher at nearby Durant. We hold it is equitable to allow plaintiff the sum of $1,700 to reimburse her for incidental expenses directly and proximately sustained as a result of the school board's unconstitutional hiring policy. She is entitled to be made whole as to these items.

In addition to back pay, the defendant officials must offer plaintiff, for the school term beginning September 1977, a position in the social studies field at one of the secondary schools as may be selected by the superintendent, and plaintiff, should she accept the offer of reinstatement, will be entitled to receive the same compensation as if she had continued in the Attala schools without interruption.[4] By our order, the defendant board and superintendent will be required, within 30 days, to make a written offer of reinstatement, designating the school to be assigned, the salary to be paid and other duties incident to the assignment in the area of her teaching competence. Within 15 days from receipt of the offer of reemployment, plaintiff shall either accept or reject the same. In the event of her timely failure to accept the written offer, her failure will be construed as a declination of employment, in which event the school board will be relieved of any obliga-

tion to offer her continued employment. Reinstatement is a valuable remedy to Ms. McCormick because it will enable her to resume her teaching profession by residing at home with her husband and in surroundings she should have the right to enjoy. In ordering reinstatement, however, the court cautions that there is no tenure in Mississippi and no public school teacher has a vested interest in the length of employment. While school boards may not discharge any teacher for constitutionally impermissible reasons, it is equally true that they are not required to continue employment indefinitely or for more than one year at a time. This observation is made in the hope that plaintiff's reinstatement, if it is to be meaningful, must be characterized by mutual cooperation and rapport between the plaintiff and defendant school officials.

The court next addresses plaintiff's right to recover reasonable attorney fees. Attorney fees are recoverable by plaintiff as prevailing party under either of two Acts of Congress, § 718 of the Emergency School Aid Act of 1972, 20 U.S.C. § 1617, and the more recently passed Civil Rights Attorneys' Fee Award Act of 1976, Pub.Law 94–559. Since attorney fees are ordinarily allowable by federal statutory law, it would be an abuse of discretion for the court not to make such an award to plaintiff since there are no circumstances which would make an award unjust.

Bearing in mind the several factors alluded to in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5 Cir. 1974), as elements to consider in determining reasonable attorney fees, the court has no hesitation in stating that the amounts claimed by counsel, both at the trial and appellate levels, are greatly excessive and cannot be approved. It is well settled in this district that $40 an hour is a reasonable fee for services rendered in court and $25 an hour is reasonable for time necessarily expended by counsel out of court in prepa-

4. Plaintiff is presently under contract with Holly Springs public school district until May 1977 and hence would not be in position to accept an offer until the next school year.

ration for the case. *Davis v. Reed*, 72 F.Supp. 644 (N.D.Miss.1976); *Latham v. Chandler*, 406 F.Supp. 754 (N.D.Miss.1976); *Ayers v. Western Line Consolidated School District*, 404 F.Supp. 1225 (N.D.Miss.1975). The court finds that James O. Ford, trial counsel, has invested 23 hours in court time in this case including the time of today's hearing, resulting in court time of $920, but his total out-of-court time claimed is not wholly compensable for the reason that a great deal of counsel's time was spent in seeking to develop an issue on which the plaintiff lost, namely, that she was entitled to *Singleton* protection. A fair allowance for the out-of-court time directly attributable to the issue on which trial counsel prevailed is determined to be 100 hours, having a total value of $2,500. Thus, a reasonable allowance for the legal services payable to James O. Ford as trial counsel in the district court, ascertained at $3,420, is rounded off at $3,500. In fixing this amount, the court has considered the fact that trial counsel is a young attorney who is engaged primarily in civil rights litigation, that he has suffered no loss of clientele in handling this case; on the contrary, his reputation as an attorney in civil rights cases is calculated to be enhanced by this victory. The court also takes into account the prevailing charges for legal services in this locality and what other attorneys charge for similar services. Necessarily, time spent in court should carry a higher rate than time spent in preparation for trial. This leaves the claim of Shea and Gardner, Washington, D. C. attorneys, who were brought into the case on appeal. It appears that these attorneys entered the appeal, not because Mr. Ford requested their association nor because plaintiff was dissatisfied with Ford's services, but because National Education Association has a policy of using this Washington firm in appellate cases affecting discharged public school teachers. While the court takes no issue with the National Edu-

cation Association policy of furnishing counsel for appellate services, we expressly decline to put our stamp of approval on the ridiculous claims made by the Washington law firm for legal services rendered in this case. This firm seeks allowance of $9,600 as attorney fees for appellate services, based upon an investment of 220 hours on appeal, for which Attorney Pollock claims $80 an hour, Attorney Kramer claims $60 an hour and Mr. White, who is not an attorney, claims $15 an hour. It would be most inequitable to charge school officials for time unnecessarily invested, or said to be invested, by arbitrarily bringing into the case counsel unfamiliar with proceedings in the trial court.[5] After examining the briefs and the legal issues involved before the Fifth Circuit Court, we believe that a generous fee for appellate services would be $1,750, or one-half the value of the legal services rendered in the trial court. The defendants are therefore assessed with total legal fees of $5,250 for services rendered in both the trial and appellate courts. In addition, reimbursable expenses of $436.29 will be allowed James O. Ford and $286.21 the Washington law firm.

Let an order awarding to plaintiff back pay, incidental expenses and job reinstatement and to her counsel reasonable attorney fees and reimbursable expenses rendered in the trial and appellate court be entered accordingly.

---

**5.** We are not necessarily bound to accept the prevailing party's figures, but may "weigh the hours claimed against his [the trial judge's] own knowledge, experience, and expertise of the time required to complete similar activities." *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5 Cir. 1974); see *Latham v. Chandler*, 406 F.Supp. 754 (N.D.Miss. 1976).