George W. PRESTON et al., Plaintiffs,

v.

John E. MANDEVILLE et al.,
Defendants.

Civ. A. No. 5059–68–H.

United States District Court,
S. D. Alabama, S. D.

May 19, 1978.

H. Diana Hicks, Mobile, Ala., Howard A. Mandell, Montgomery, Ala., W. Clinton Brown, Jr., Mobile, Ala., for plaintiffs.

James S. Ward, Asst. Atty. Gen., Montgomery, Ala., for defendants.

Maury Friedlander, Mobile, Ala., for Mobile County.

HAND, District Judge.

This matter is presently submitted for this Court's determination of a reasonable attorneys' fee award on behalf of plaintiffs' counsel for work performed after February 16, 1977. The Court has considered the court record, the memoranda of law and oral arguments propounded by counsel for all parties, the affidavits both in support of and in opposition to the awards claimed, together with the applicable law, and finds as follows:

## FINDINGS OF FACT

1. This lawsuit was commenced on July 5, 1968 through a complaint alleging that the defendants,[1] acting under color and authority of state law, were systematically excluding members of the plaintiff class from jury service in the Mobile County Circuit Court System. The plaintiff class was composed of all black citizens of Mobile County who were over the age of twenty-one years and who resided in the county for one year prior to the initiation of the litigation. After several years of litigation, both in this Court and in the Fifth Circuit Court of Appeals, this Court on December 16, 1975 entered a decree requiring the adoption of a random selection system by the Mobile County Jury Commission, the system having been adopted by consent of counsel for all parties. On February 16, 1977 the plaintiffs filed a motion to cite the defendants for contempt for failing to abide by the 1975 decree, alleging that the defendant Jury Commission had not by then yet achieved the random selection process ordered by the Court. Following an evidentiary hearing on this matter, a consent decree was entered into on April 15, 1977 to provide a constitutional jury system until September 1, 1977, when a permanent plan was to be implemented. On September 2, 1977 this Court entered a permanent decree under which the defendant Jury Commission was to operate thenceforth.[2] In this decree, the Court ruled that the plaintiffs were entitled to recover a reasonable attorneys' fee, but postponed consideration of the amount of such awards until a later date.

2. On April 17, 1978 the plaintiffs filed a motion for an award of costs and attorneys' fees. Since this motion has previously been ruled upon, the only issue before the Court is the reasonableness of the award requested by each of the attorneys for the plaintiffs.

3. The plaintiff class was represented by three different attorneys during the most recent phase of this litigation. For purposes of clarity, the Court has chosen to deal with the award claim of each attorney separately.

(a) H. Diana Hicks requests an award of $9,285.00 for her work in this phase of the case. Her calculations are based on 123.8 hours of work at a rate of $60.00 per hour ($7,428.00) plus a 25% "bonus" ($1,857.00) for prevailing in this matter. Her affidavit in support of the award reveals that she has been involved in this case since January 15, 1977 and that her work has included two court appearances, the preparation of two proposed decrees, the drafting of various motions and briefs, various legal research, and conferences with co-counsel and an expert. Her affidavit does not reveal how long she has been practicing law, but it does reflect that she is admitted to practice in this Court, in the Fifth Circuit Court of Appeals, and in all Alabama state courts.

(b) W. Clinton Brown, Jr. requests an award of $4,267.50 for his work in this case. His calculations are based upon 56.9 hours of work at a rate of $60.00 per hour ($3,414.00) and a 25% "bonus" ($853.50) for prevailing in this matter. His affidavit reflects that he has been involved in this case since January 27, 1977 and that his participation has included investigation and research, appearance at two court hearings, negotiations and preparation of two decrees, legal research, and conference with co-counsel and an expert. The affidavit further reveals that Brown is a member of

---

1. The original defendants included the Sheriff of Mobile County, the Circuit Clerk for Mobile County (John E. Mandeville), the Clerk of the Mobile County Jury Commission, the Circuit Judges of Mobile County, the Mobile County Judge of Probate, the Mobile County District Attorney, and the members of the Mobile County Jury Commission.

2. Under the terms of the final decree, the provisions of the April 1977 consent decree were to remain in force through November 28, 1977, at which time the permanent plan was to take effect. Under the permanent plan the jury list is compiled from variou · lists, including registered voters, automobile owners, taxpayers, telephone subscribers, and electrical subscribers. From this compiled list, random extraction of names was to be utilized to provide the master list.

the Mobile law firm of Crawford, Blacksher, Figure & Brown, is admitted in the District Court of both the Northern and the Southern District of Alabama, the Fifth Circuit Court of Appeals, and all Alabama state courts, and has been engaged in the active practice of law for three and one-half years. Brown avers that he is a specialist in the areas of criminal law and criminal justice-related litigation.

(c) Howard A. Mandell requests an award of $2,437.50 for his work in this phase of the case. His calculations are based upon 30 hours of work at $65.00 per hour ($1,950.00) plus a 25% "bonus" ($487.50) for prevailing in this matter. Mandell's affidavit reflects that he has been involved in this litigation since 1971 or 1972. During this phase of the lawsuit, his participation has included legal research, conferring with co-counsel, attending one hearing, and assisting in the preparation of the consent decree. Mandell practices law in Montgomery under the firm name Mandell & Boyd, and has been engaged in the practice of law for six years. He is admitted to practice in all federal courts in the State of Alabama, in the Fifth Circuit Court of Appeals, and in all Alabama state courts. The Court takes judicial notice from other civil rights cases that Mr. Mandell is an accomplished specialist in the area of civil rights litigation.

4. Hicks and Brown have itemized the hours spent on this phase of the case, while Mandell has not. The affidavits reflect the following breakdown of hours spent on legal work:

| | Hicks | Brown |
|---|---|---|
| Conference with co-counsel | 15.2 | 15.5 |
| Legal research | 25.7 | 6.0 |
| Drafting of motions and briefs | 32.1 | 0.0 |
| Correspondence | 10.9 | 0.0 |
| Hearings | 7.5 | 7.0 |
| Conferences with expert and officials | 6.9 | 0.0 |
| Negotiations | 23.1 | 22.95 |
| Factual investigation | 0.0 | 2.0 |
| Hearing preparation | 0.0 | 2.2 |
| Conference with Judge | 0.0 | 1.25 |
| Miscellaneous | 2.4 | 0.0 |
| | 123.8 | 56.9 |

5. The amount sought by counsel for plaintiffs has been objected to strenuously by the State of Alabama, the actual defendant herein.[3] While the State does not contest this Court's earlier finding that plaintiffs are entitled to such an award, it takes the position that the amount sought is unreasonably high. In support of this position the State has introduced affidavits of two local lawyers, both opining that a reasonable attorney fee in this matter for plaintiffs' counsel would be $30.00 per hour,[4] instead of the $60.00 per hour sought by Hicks and Brown.[5]

In addition to challenging the hourly rate sought by plaintiff's counsel, the State seriously questions the reasonableness of the amounts sought on two other grounds. The first contention of the State is that counsel should not be entitled to a flat rate for the

---

3. Although the nominal defendant is the Mobile County Jury Commission, during the course of this litigation the State Legislature passed the Judicial Article [1975 Alabama Acts, No. 1205, at 2384] which prescribed a unified judiciary under which all full-time court personnel became employees of the State (§ 7–101).

4. Affidavits of Thomas M. Galloway and Mylan R. Engel. The Galloway affidavit reveals that he has been engaged in the active practice of law for more than twenty-five years and is a partner in the Mobile firm of Collins, Galloway & Smith. Although the firm maintains a varied general practice, Galloway avers that he has had experience with civil rights litigation through his work for the Mobile Housing Board, for which he receives $50.00 per hour. The Engel affidavit reveals that he, too, has

been engaged in the practice of law in excess of twenty-five years. He is a partner in the firm of Engel & Smith and has experience in civil rights litigation through his representation of the Mobile County Personnel Board. In his representation of the Personnel Board, Engel receives $30.00 per hour in addition to an undisclosed retainer. Both Engel and Galloway base their opinions of a reasonable attorney fee award in this case upon the experience of the attorneys involved, and both qualify their opinion by averring that a lower rate should be given where there is duplication of effort or for time spent conferring with co-counsel.

5. Neither Galloway nor Engel expressed an opinion with regard to a reasonable fee for an attorney of Mandell's training and experience.

hours worked, since so many of the hours were out of court and included conferences with co-counsel. The State contends on this point that the Court should, in setting an award, make a distinction between the various types of services performed. The State also points to awards in other civil rights cases and contends that $60.00 or $65.00 per hour is much more than is usually granted, and that the case law in point does not support counsel's request for a 25% bonus.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the subject matter of this portion of this lawsuit and the parties hereto by virtue of Title 42, U.S.C.A., § 1988, which provides, in pertinent part, that "[i]n any action or proceeding to enforce a provions of sections 1981, 1982, 1983, 1985, and 1986 of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." The plaintiffs having prevailed on the issues before the Court, the only question for Court determination is the amount of a reasonable fee.

2. At the outset, the Court has serious questions concerning the propriety of three attorneys handling a case of this nature. The affidavit of James S. Ward, Assistant Attorney General for the State of Alabama and counsel for the defendant, reveals that he alone represented the defendants' interests on the contempt motion, and that much of the labor involved in achieving the final decree was his. While the Ward affidavit does not aver that co-counsel was unnecessary, the Court does discern a serious suggestion of overkill and possible duplication of services. Another serious concern to the Court centers around the actual representation of the plaintiff class by the attorneys who are here seeking awards. The attorneys of record for the plaintiffs according to the court file include Orzell Billingsley, A. J. Cooper, James K. Baker, Charles Mor-

gan, Jr., Melvin L. Wulf, and Martin Garbus. Assuredly this group has changed over the years of this litigation, and Mandell was clearly involved by the time the case reached the Fifth Circuit in 1973. However, there is nothing in the record other than evidence of his participation to indicate his representation of the plaintiff class. Similarly with Hicks, her first participation in this case was not by notice of appearance, but rather was her filing of the motion to cite for contempt and the brief in support thereof filed in February of 1977. This Court considers such conduct improper, and will in the future ignore all pleadings or other filings not preceded by a notice of appearance. However, in view of the limited experience of counsel at the time appearances were made in this matter, such irregularity in form will not be considered in this case. The Court notes with approval that Brown filed a notice of appearance on February 18, 1978, but further questions the propriety of such notice, since Brown neglected to state his authority for entering the case on behalf of the plaintiff class.[6]

3. Leaving these admittedly technical matters aside, the Court is required, under *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), and its interpretative cases, to set out its findings upon which an attorney fee award determination is made. Although various findings under the *Johnson* guidelines are set out above in this Court's findings of fact, for purposes of clarity the Court has chosen to set out each of the guidelines separately and this Court's findings thereunder:

■ (1) *The time and labor required.* The affidavits of plaintiffs' attorneys reveal that Hicks contributed 123.8 hours of legal work, that Brown contributed 56.9 hours, and that Mandell contributed 30 hours. However, in reaching its determination, the Court gives greater emphasis to the manner in which such time was spent (Finding of

---

**6.** In the notice Brown requested the Clerk of this Court to "enter my name as an additional attorney of record for the plaintiffs in the above-referenced cause." The notice does not state whether Brown was acting under Man-

dell's or Hick's authority, nor does it reveal that he had been requested by the class representatives to appear in their behalf. The Court is of the opinion that future notices should set out such authority.

Fact, No. 4, *supra*), than to the mere computation of total time spent. The Court notes that no less than 30.7 hours was spent in conferences between co-counsel and that there was often duplication of effort in the fact that two or more co-counsel were present at conferences with defense counsel on various matters. Under *Johnson*, this Court is required to closely scrutinize cases where more than one attorney is involved for possible duplication of effort.[7] A review of the record, together with this Court's own knowledge of the case, convinces the Court that the appropriate standard in this case calls for a differentiation of rates based upon the type and amount of labor performed.

(2) *The novelty and difficulty of the questions presented.* Counsel for the plaintiffs were called upon to formulate and institute a new jury selection system for Mobile County, a moderately difficult task but by no means novel. This case was at the remedy stage prior to the appearances of Hicks and Brown, and Mandell's claim relates only to services performed during this period. As the defendant's brief contends, and the record reveals, much of the selection system eventually agreed upon was drawn from procedures previously worked out in this case between Mandell and Maury Friedlander, attorney for the Mobile County Commission, which were incorporated in this Court's Order of December, 1975. The *Johnson* court spoke of "cases of first impression," 488 F.2d at 718, and this case clearly was not.

(3) *The skill requisite to perform the legal service properly.* The Court is convinced that all of the attorney-claimants in

this matter were suitably skilled to properly provide the necessary legal services.

■ (4) *The preclusion of other employment due to acceptance of this case.* The Court has considered the contentions of Hicks that her participation in this case precluded her from accepting other employment during the months of February, March, April, and August of 1977 and, based on the affidavit filed by Hicks itemizing the time spent each month, is convinced that she was not precluded from other employment by her participation in this case.[8]

There is no contention that either Brown nor Mandell was precluded from other employment by their participation in this case.

(5) *The customary fee.* Counsel for plaintiffs argue that a customary fee in this type of case is $35.00 to $140.00 per hour, while the estimate of defendants' counsel is much lower. The plaintiffs have misconstrued the *Johnson* guidelines on this point, for what is needed is the customary fee charged by these particular lawyers, and it is not clear from the petition that this is what the Court has been provided. The Court assumes for the sake of this opinion that Hicks, Brown and Mandell all charge $35.00 to $140.00 per hour for legal work in the federal courts.

(6) *Whether the fee is fixed or contingent.* The attorneys' fees in this case were entirely contingent pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, Title 42, U.S.C.A., § 1988.

(7) *Time limitations imposed by the client or by the circumstances.* There can be no doubt but that counsel gave this matter high priority, most likely due to the Court's

---

7. Judge Roney aptly stated the standard by which time and labor are to be judged in his opinion in *Johnson*:

 The trial judge should weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities. If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized. The time of two or three lawyers in a courtroom or conference when one would do, may obviously be discounted.

488 F.2d at 717.

8. As the defendants' brief correctly notes, the itemization of time spent in the Hicks affidavit reveals that she contributed an average of four hours a week to this case in February, 1977, an average of six hours a week in March, 1977, almost seven hours a week in April, 1977, and six and one-half hours a week in August, 1977. The Court is not persuaded that such labors serve to preclude the acquisition or continuance of other employment.

insistence that a constitutional selection process by implemented *eo instanti.* However, again viewing the time itemizations, it does not appear to the Court that serious hardships were created by such limitations.

(8) *The amount involved and the results obtained.* There were no damages sought or awarded in this case, but plaintiffs' counsel did succeed in implementing a jury selection process that cured pre-existing systematic exclusion of blacks from the juries. They succeeded in providing Mobile County with a constitutional jury selection system, a benefit to be shared by citizens both black and white.

■ (9) *The experience, reputation, and ability of the attorneys.* The record reflects that Hicks had less than one year of experience at the time she appeared in this litigation, that Brown had over two years, and that Mandell had approximately six at the initiation of this particular part of the litigation. While longevity is not by itself determinative, 488 F.2d at 719, it is a factor for consideration. Mandell has an excellent reputation in the civil rights field, while Hicks and Brown have not yet achieved his stature. Hicks has demonstrated an ability to handle civil rights in other cases before this Court, of which this Court takes judicial notice. Brown avers a specialization in criminal law, with some experience in tangential civil rights cases. As an element of consideration in determining the fee to be awarded in this case, this Court finds Mandell to be superior in experience, reputation, and ability to both Hicks and Brown, and finds that Hicks and Brown are fairly equally qualified.

(10) *The undesirability of the case.* The *Johnson* court was concerned about the economic impact that the acceptance of a civil rights suit might have on an attorney's law practice. Counsel for the plaintiffs assert that the "undesirability" of this particular case and civil rights cases in general "is evidenced by the relatively few members of the Mobile Bar who have chosen to represent plaintiffs in cases of this nature." This is not within the scope of "undesirability" as envisioned by the *Johnson* opinion.

The Court has already noted that Hicks and Mandell do a great deal of civil rights work, and that Brown's law firm is similarly engaged. Under these circumstances, the Court is convinced that no malevolent economic effect will be felt by these attorneys; indeed, the experience and reputation gained from such proceedings will no doubt aid each in their future practice. As far as adverse community reaction is concerned, the Court is convinced that any such reaction in this case died down long ago upon the determination that a new jury selection system had to be implemented. The Court cannot conceive of how counsel's efforts toward implementation of the new system could result in any adverse community reaction.

(11) *The nature and length of the professional relationship with the client.* Plaintiffs' counsel state that none of them had ever had a professional relationship with the plaintiffs prior to this action, and they do not inform the Court of the nature of their relationship with their clients in this case, so the Court enters no finding on this issue.

(12) *Awards in similar cases.* Counsel for the plaintiffs state in brief that such cases "indicate that attorneys' fees of $60.00 to $65.00 per hour plus a 25% bonus are entirely reasonable," citing *Brown v. Culpepper*, 559 F.2d 274 (5th Cir. 1977), another systematic exclusion case. This Court is unadvised of the qualifications of such counsel in *Brown*, but does note that New York counsel received $75.00 per hour and local counsel $65.00 per hour. 559 F.2d at 276. The most recent Fifth Circuit decision authorizing an award of attorney fees in a civil rights case was *Miller v. Carson*, 563 F.2d 741 (5th Cir. 1977), a civil rights class action aimed toward improving conditions at the Duval County, Florida jail. In that case the District Court granted the lead attorney an award at the rate of $60.00 per hour for in-court time and $40.00 per hour for his out-of-court labors, and granted an award of $30.00 per hour to the less

experienced attorney working with him.[9] Prior to *Miller*, there was the case of *Rainey v. Jackson State College*, 551 F.2d 672 (5th Cir. 1977), where the Fifth Circuit awarded fees at the rate of $35.00 per hour in a case concerning the civil rights of a college teacher.[10] Other recent cases cited by the defendants include *Newman v. State of Alabama*, 522 F.2d 71 (5th Cir. 1975) ($30.00 per hour); *McCormick v. Attala City Board of Education*, 424 F.Supp. 1382 (N.D.Miss.1976) ($40.00 per hour in-court, $25.00 out-of-court); *Latham v. Chandler*, 406 F.Supp. 754 (N.D.Miss.1976) ($40.00 in-court, $20.00 out-of-court); and *Wade v. Mississippi Cooperative Extension Service*, 378 F.Supp. 1251 (N.D.Miss.1974) ($35.00 per hour).

■ 4. Based on the foregoing findings under the *Johnson* guidelines, with consideration of the nature of the case and the record on file with the Court, the Court is of the opinion that a fair and reasonable attorneys' fee for attorneys H. Diana Hicks and W. Clinton Brown, Jr. is $35.00 per hour for in-court work and $25.00 per hour for out-of-court work with the exception of co-counsel conferences which should reasonably be compensated at $15.00 per hour. The affidavit of Howard Mandell does not itemize the manner in which his 30 hours were spent, so the Court finds that a fee of $65.00 per hour for attorney Mandell is fair and reasonable. Under these findings, the attorneys in this case are entitled to compensation as follows:

(a) H. Diana Hicks is entitled to awards of $262.50 for 7.5 in-court hours, $2,522.50 for 100.9 out-of-court hours, and $228.00 for 15.2 hours spent in conference with her co-counsel, or a total award of $3,013.00.

(b) W. Clinton Brown, Jr. is entitled to awards of $288.75 for 8.25 in-court hours, $828.75 for 33.15 out-of-court hours, and $232.50 for 15.5 hours spent in conference with his co-counsel, or a total award of $1,350.00.

(c) Howard A. Mandell is entitled to an award of $1,950.00 based on 30 hours labor at $65.00 per hour.[11]

■ 6. The plaintiffs' counsel request a 25% bonus since they prevailed in this case. Such a result is not envisioned by either the statutory law or the case law; indeed, prevailing is a prerequisite to the invocation of this Court's discretion to award a fee. Since the purpose of Title 42, U.S.C.A., § 1988 is to assure private civil rights litigants of representation rather than to provide windfalls to attorneys, the Court is convinced that the request for bonuses is due to be DENIED. *See* The Civil Rights Attorney's Fees Awards Act of 1976, 1976 *United States Code Congressional and Administrative News* 5908 *et seq.*

---

**9.** The District Court decision reveals that lead counsel, William I. Sheppard, was at the time of the award the senior partner of a five man firm in Jacksonville, Florida with specialization in both criminal and civil rights litigation. *Miller v. Carson*, 401 F.Supp. 835, 859 (M.D.Fla. 1975). Although Sheppard's co-counsel's qualifications were not set out, the District Court felt a lower fee was appropriate because of such co-counsel's "lack of experience . . . in the civil rights area." 401 F.Supp. at 859.

**10.** The qualifications of plaintiffs' counsel are not revealed, but the court rejected the argument that the award should be lower because of the relative youth and inexperience of counsel. *Rainey* also recognized the propriety of distinguishing between the type of work performed, since the award was at $35.00 per hour for 237 hours, and $17.50 per hour for 165 hours.

**11.** The Court takes judicial notice of the fact that Mandell's involvement in this case greatly exceeds the 30 hours set out in his affidavit. This, in addition to his credentials as set out above, is the primary reason for the disparity in the hourly rates afforded to the attorneys herein.