**Robert CARTER, et al.**

v.

**SCHOOL BOARD OF WEST FELICIANA PARISH, et al.**

Civ. A. No. 3248–A.

United States District Court, M.D. Louisiana.

Aug. 5, 1983.

Robert C. Williams, Baton Rouge, La., for plaintiffs.

Leon A. Picou, Dist. Atty., St. Francisville, La., for defendants.

## MEMORANDUM OPINION AND DECREE

JOHN V. PARKER, Chief Judge.

In this school desegregation case, the court has been presented with two proposed consent decrees, both of which have been approved by the defendant school board and one each has been approved by each of the other parties. The court has before it: [1] A motion to intervene as plaintiff by the United States, [2] A joint motion by the United States and the defendant school board for approval of a consent decree, [3] A joint motion by plaintiffs and the defendant school board for approval of a consent decree and [4] A motion for further relief filed by plaintiffs. Plaintiffs oppose the motion to intervene. The provisions of the two proposed consent decrees are identical except for a slight difference in wording in one paragraph.

A brief recitation of the events leading up to our present situation will be helpful to understanding our situation.

This action was commenced on July 22, 1965, by Robert Carter, *et al* seeking to desegregate the school system in West Feliciana Parish, Louisiana. The litigation followed the usual course for school desegregation cases of that time—trials, appeals and remands. *Hall v. St. Helena Parish School Board* (consolidated sub nom.), 417 F.2d 801 (5th Cir.), *cert. denied,* 396 U.S. 904, 90 S.Ct. 218, 24 L.Ed.2d 180 (1969); *see also* 419 F.2d 1211 (5th Cir.1969), *rev'd in part,* 396 U.S. 290, 90 S.Ct. 608, 24 L.Ed.2d 530 (1970), *modified in part,* 432 F.2d 875 (5th Cir.1970). Ultimately, an order approving a desegregation plan was issued on July 25, 1969, modified December 11, 1969, and again January 22, 1970. The school system has basically operated under those orders for the last thirteen years.

In 1980, apparently because of a complaint received, the United States Department of Education began an investigation into allegations of racial discrimination in student and faculty assignment by the defendant school board. On July 28, 1982, the Department of Education announced its findings of fact and notified the Department of Justice and the Superintendent of Schools that it had concluded that the West Baton Rouge Parish School Board had followed a policy of racially discriminatory pupil and teacher assignments in the public school system. Thereafter, representatives of the school board met with representatives of the Department of Education, and plaintiffs, as well as representatives of the Department of Justice and eventually specific remedial measures were agreed upon by all parties. The consent decrees now presented to the court are the results of those negotiations.

On July 20, 1983, upon informal request by the Department of Justice, this court scheduled a status conference for 11:00 A.M., July 28, 1983. On July 22, 1983, counsel for plaintiffs filed a motion for further relief predicated upon the findings of the Department of Education. This motion is noticed for hearing August 5, 1983. The United States filed its motion to intervene on July 28, 1983.

### THE MOTION TO INTERVENE

■ Plaintiffs oppose the motion to intervene for several reasons: [1] Untimeliness; [2] In view of the consent decree which has already been agreed upon, plaintiffs claim that the certification by the Attorney General of the United States to the effect that the case is of "general public importance" is not correct; and [3] The Department of Justice should not be permitted to intervene and take "credit" for a consent decree not of its own making.

As previously noted, the consent decrees are identical except for a slight difference in wording in one paragraph; the objectives of each are identical in every respect and the United States has no objection to the wording of the decree proposed by counsel for plaintiffs.

The United States moves to intervene of right under Rule 24(a), Fed.R.Civ.P., and under the specific authority of § 902 of Title IX of the Civil Rights Act of 1964, 42 U.S.C. § 2000h–2:

> Whenever an action has been commenced in any court of the United States seeking relief from the denial of equal protection of the laws under the Fourteenth Amendment to the Constitution on account of race, color, religion, sex or national origin, the Attorney General for or in the name of the United States may intervene in such action upon timely application if the Attorney General certifies that the case is of general public importance.

The Attorney General has in fact certified that this case is of general public importance, as evidenced by the certificate dated March 3, 1983, attached to the proposed complaint in intervention.

Plaintiffs say that the intervention is untimely and should not be allowed because the Department of Justice waited five months after the Attorney General's certification to actually move for intervention and further argue that the motion comes some thirteen years after plaintiffs, without assistance of the Department of Justice, obtained judicial orders directing desegregation of the West Feliciana Parish school system.

The United States concedes, as it must, that timeliness is a necessary requirement but asserts that in cases of this nature, timeliness is an expression of art rather than a hard and fast rule. Moreover, the Department of Justice notes that the Department of Education, as it is required to do by statute, referred its findings concerning West Feliciana Parish to the Department of Justice for resolution. The delay in filing the motion to intervene following the Attorney General's certification on March 3, 1983, is of no moment. All counsel agree that the Department of Justice was actively involved in the negotiations and discussions which were had following certification and looking toward formulation of a consent decree.

It is correct that this action has been pending for more than eighteen years and that the original plaintiffs have paddled the canoe successfully during that period of time without navigational aid from the Department of Justice. It is also undisputed, however, that the Department of Justice received the results of the investigation from the Department of Education on July 28, 1982, and that it has acted promptly (by governmental standards) to evaluate the information, to initiate negotiations and to present the matter to the court.

The only issue now pending in this action is the question of the remedial action required by reason of the Department of Education's investigation; the Department of Justice is fully familiar with that investigation, as well as the remedial measures required. The intervention will not retard

the progress of this action and the court must conclude that, within the flexibility required in matters of this nature, the motion of the United States is "timely." *United States v. Jefferson County Bd. of Education,* 372 F.2d 836 (5th Cir.1966), *decree corrected,* 380 F.2d 385 (1967) *cert. denied,* 386 U.S. 1001, 87 S.Ct. 1342, 18 L.Ed.2d 430 (1967).

■ Plaintiffs also contest the Attorney General's certification that this case is in fact "of general public importance." Plaintiffs argue that since the school board has already agreed to undertake corrective actions so as to bring its operations within constitutional standards, the case cannot be of general public importance because there is nothing left to be done except for the court to grant its formal seal of approval. Consequently, say the plaintiffs, the case is of importance only to the relatively small number of people actually involved in the litigation.

We have been unable to find any reported case involving a challenge to the Attorney General's certification under § 902 of Title IX of the Civil Rights Act of 1964, nor has counsel for plaintiffs provided any citation to that effect. The statute itself incorporates no specific standards for the guidance of the Attorney General and apparently leaves the matter solely within the discretion of that official. The Attorney General may well have many factors to consider in making a determination that a case is of general public importance, many of which may well be of a non-public nature. It is even possible that a case could be of general public importance, though the presiding judge were ignorant of that situation. The Congressional intent behind the enactment of the Civil Rights Act of 1964 indicates that such certification ought to be at the discretion of the Attorney General and in the absence of a specific statutory provision mandating such review, I hold that the certification of the Attorney General as to general public importance is not subject to judicial review. The certification having been made, the statute has been complied with.

■ Finally, plaintiffs argue that the Department of Justice is simply "scalp-hunting," that is, seeking to add another trophy to the civil rights cabinet to display for electioneering purposes. As I read the statute, the Congress intended to grant the Attorney General—whoever occupies that office—an unconditional right to intervene in those cases which he certifies are of general public importance. The court has no more authority to review his motives for such certification than it does to review the fact of certification. Consequently, that issue is beyond this court's jurisdiction. It should be added, however, that plaintiffs have not offered any evidence in support of the "scalp hunter" thesis and this court makes no such finding.

For these reasons, the motion to intervene must be granted and it is. The complaint in intervention on behalf of the United States is authorized to be filed.

## THE CONSENT DECREES

■ The court has carefully reviewed both proposed consent decrees under the standard of *United States v. City of Miami,* 614 F.2d 1322 (5th Cir.1980), *opinion on reh'g,* 664 F.2d 435 (5th Cir.1981) and *United States v. City of Alexandria,* 614 F.2d 1358 (5th Cir.1980) and concludes that these provisions are reasonable and within constitutional requirements. Because plaintiffs are insistent that the wording of their proposed decree is superior to that proposed by the government, plaintiff's proposal will be accepted and made the judgment of the court. Although the United States has not formally signed a motion approving the proposed decree submitted on behalf of plaintiffs, counsel for the government has stated to the court that it fully approves of that decree and that it has no objection to the slight revision in wording contained in the one paragraph. Accordingly, plaintiff's decree will be referred to as a "consent decree" and enforced as such.

This action, of course, makes plaintiff's motion for further relief moot.

For the foregoing reasons, the motion to intervene on behalf of the United States is hereby GRANTED and its complaint and intervention may be filed. The consent decree submitted and filed herein by counsel for plaintiffs on July 28, 1983, is hereby accepted and accordingly, it is hereby ORDERED, ADJUDGED AND DECREED:

a) The West Feliciana Parish School Board shall assign students to grades K–8 in accordance with the resolution of the School Board of West Feliciana Parish of May 12, 1983, which provides for:

(1) Change the organization of Tunica School from K–8 to K–6 and transfer grades seven and eight to West Feliciana High School, consolidating all seventh and eighth grade classes in the parish at West Feliciana High School, decreasing the enrollment at Tunica by approximately thirty to forty students; and

(2) Change the Tunica School Attendance Zone by extending a bus route into the "Sligo Loop" area and along Highway 66 North at the Hollywood intersection, increasing the attendance at Tunica School by approximately 30 students.

All other student assignments shall continue to be made in accordance with prior orders of this Court.

b) The West Feliciana Parish shall adopt non-discriminatory standards for the assignment of students and faculty to classrooms. A copy of these standards should be furnished to plaintiffs' counsel within 30 days of the entry of this Order. Those standards shall be implemented for the 1983–84 school year and thereafter.

c) Thirty days after the start of the fall and spring semester of each school year, defendants shall report to the plaintiffs:

(1) The total number of students, by race, enrolled in the West Feliciana Public School System;

(2) The total number of students, by race, enrolled at each school within the Feliciana Public School System;

(3) The total number of students, by race, enrolled in each class section by grade and subject per class section;

(4) The total number of teachers, by race and name, assigned to each school;

(5) The total number of teachers, by race and name, assigned to each class section by grade, subject taught and whether or not that teacher is certified in the subject taught;

(6) A brief description of any present or proposed construction or expansion of facilities.

(d) The West Feliciana Parish School Board is hereby enjoined from unlawful discrimination on the basis of race in the operations of their school system.

(e) All other orders in this case, not inconsistent herewith, remain in full force and effect, and this Court retains jurisdiction over this action.