Otha Lee **LATHAM** et al., Plaintiffs,

v.

Christine L. **CHANDLER** et al., **Defendants.**

No. GC 75–48–K.

United States District Court, N. D. Mississippi, Greenville Division.

Jan. 23, 1976.

Robert E. Buck, Greenville, Miss., for plaintiffs.

R. C. McBee, Greenwood, Miss., for defendants.

## MEMORANDUM OPINION

KEADY, Chief Judge.

This is a class action brought pursuant to the Voting Rights Act of 1965, 42 U.S.C. § 1971 et seq., 42 U.S.C. § 1983, and the First, Fourteenth, Fifteenth and Twenty-Sixth Amendments. On May 21, 1975, after evidentiary hearing and oral argument, we preliminarily enjoined defendant, Christine L. Chandler, Circuit Clerk and Registrar of Leflore County, Mississippi, from treating voter registration applications tendered by black students attending Mississippi Valley State University, situated in Leflore County, on the basis of standards and procedures different from those applied to other voter registration applicants who are residents of Leflore County. Defendant sought no appeal but complied with our order. Subsequently, on November 7, 1975, plaintiffs moved for an award of attorney fees in the action, it being evident that, aside from certifying the case as a class action and making permanent the terms of the preliminary injunction, no further relief was desired.

Plaintiffs' attorney has now submitted his affidavit claiming an attorney fee of $3,965 together with court costs of $116.76. All parties having filed memorandum briefs on the attorney fee issue, the question is now ripe for ruling.

On April 5, 1975, the date of commencement of this action, there existed no specific congressional authorization for an attorney fee award in cases brought under either § 1983 or the Voting Rights Act. And, under the explicit holding of the Supreme Court in *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), it was apparent by the date of the hearing on preliminary relief that without statutory authorization no such award could be here made. *Alyeska* eliminated the private attorney general concept as an exception to the traditional American practice of not permitting nonstatutory attorney fee awards to prevailing litigants. Other exceptions to the rule which survived *Alyeska,* particularly the "bad faith" litigation standard, are plainly inapplicable to this case.

On August 6, 1975, however, subsequent to the date of the hearing on preliminary relief, and after virtually all the services by plaintiffs' attorney had been rendered, 42 U.S.C. § 1973*l*(e) (P.L. 94–73, § 402) became law. That section provides:

"In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

As to the applicability of this statute to the subject matter of this action, there can be no doubt. This suit was brought precisely for the purpose envisioned by Congress in § 1973*l* and, if otherwise applicable, the statute would remove any obstacles to an award posed by *Alyeska.* The question here is whether the statute applies to legal services rendered before its enactment in cases still pending before the court on the statute's effective date.

Until recently this would have been a difficult question indeed, but *Bradley v. Richmond School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), now enables us to answer confidently that § 1973*l* does apply here, and that a reasonable attorney fee can be awarded un-

der its aegis for all legal services rendered by plaintiffs' counsel in the prosecution of this action.

In *Bradley,* a school desegregation suit, final judgment was entered in favor of plaintiffs in the district court, and while the school board's appeal was pending before the court of appeals, § 718 of the Emergency School Aid Act, 20 USC § 1617, became law. That section, similar in import to § 1973*l,* authorized the district courts to make attorney fee awards to prevailing litigants in school desegregation cases. On certiorari, the Supreme Court held that § 718 did authorize an attorney fee award in *Bradley,* "on the principle that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley,* supra, 416 U.S. at 711, 94 S.Ct. at 2016. Relying on Mr. Chief Justice Marshall's analogous holding in *U. S. v. Schooner Peggy,* 5 U.S. (1 Cranch) 103, 2 L.Ed. 49 (1801), the Court expressly rejected "the contention that a change in the law is to be given effect in a pending case only where that is the clear and stated intention of the legislature." *Bradley,* supra, 416 U.S. at 715, 94 S.Ct. at 2018. See also *Thorpe v. Housing Authority of The City of Durham,* 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969); *Thompson v. Madison County Board of Education,* 496 F.2d 682 (5 Cir. 1974); *Armstead v. Starkville Municipal Separate School District,* 395 F.Supp. 304 (N.D.Miss.1975).

It is thus clear from *Bradley* and *Thorpe* that the law change effected by § 1973*l* is to be given full effect in cases pending on its effective date, unless the statute or its legislative history manifests a congressional intent that it not so apply, or unless manifest injustice would result.

The statutory text is silent on the question, and we have been unable to discover any helpful expression of congressional intent in the legislative history. See 1975 U.S.Code Cong. & Admin. News, pp.1491–94. As for any injustice which may result from the retrospective application of this statute, this is emphatically not a case in which substantive rights are being deprived; nor can it be effectively argued that § 1973*l* unfairly escalates the substantive obligations of the defendant. The defendant's constitutional and statutory obligations vis-a-vis the plaintiffs' voting rights remain unchanged. Indeed, at the date of commencement of this action, *Alyeska* had not yet been decided. At that time, and continually until only 9 days before the hearing on preliminary relief (*Alyeska's* date of decision), the defendant could have been compelled to pay plaintiffs' attorney fees under the then-extant private attorney general concept. Thus, from the defendant's point of view, § 1973*l* presented only an alternative basis of liability; nor is it probable that earlier enactment of § 1973*l* would have changed the defendant's position in relation to the merits of plaintiffs' claim.

We therefore conclude that § 1973*l* applies to this action. Because of the law change following our initial refusal to grant attorney fees at the time of the preliminary hearing, we now exercise our discretion to allow an award of attorney fees under the statute. Plaintiffs have prevailed on the merits of their voting rights claim, and no special circumstances appear which would justify our refusal to make an award.[1] That all professional services were virtually rendered prior to the enactment of the statute does not make the award inequitable, particularly since the case is one in which final relief is yet to be granted.

---

1. The legislative history of § 1973*l* is unmistakable on the point that, absent unusual circumstances, the discretion of the district court should ordinarily be exercised in favor of an award. 1975 U.S.Code Cong. & Admin.News at p. 1491. Also persuasive is *Northcross v.*

*Board of Education of Memphis City Schools,* 412 U.S. 427, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973), in which the Supreme Court indicated that an attorney's fee award should ordinarily be made in school desegregation cases under the analogous 20 USC § 1617.

■ In ascertaining a reasonable award in this case, we are mindful of the guidelines specified by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (1974). Comparison of those guidelines with the facts sub judice leads us to the following conclusions.

The legal principles at issue in this case, while of undoubted significance to the members of the plaintiff class, were neither unsettled when the complaint was filed nor difficult to demonstrate in the context of the facts. The duration of the contest was short, with less than 7 weeks transpiring between commencement of the action and the granting of preliminary relief. Nor does it appear that the nature of the case was such that it precluded plaintiffs' counsel from accepting other remunerative employment during its pendency.

On the other hand, plaintiffs' counsel made his case with demonstrated skill and professional ability, in both his presentation of facts and legal argument. He secured the principal relief sought by his clients within the time limitations imposed by pending elections, thus fully safeguarding their rights. Too, we would be less than candid if we did not acknowledge that voting rights cases of this nature, brought on behalf of student-plaintiffs against elected county officials, are neither widely popular among citizens of this state nor viewed by the members of the bar as among the choicest forms of representation. Finally, we note that, though relatively young in the practice of law, plaintiffs' counsel is experienced in handling civil rights cases. We consider these factors as well as our independent judgment as to the amount of time and labor which plaintiffs' counsel should reasonably have expended in his handling of this action. The fee-claimant, of course, must shoulder the burden of establishing the reasonableness of his request.

Plaintiffs' counsel here claims 4.5 hours of in-court legal services at $50 per hour, together with 93.5 hours of office and investigative work at $40 per hour, for a total claimed fee of $3,965. From a consideration of all criteria pertinent to fixing attorney fees, we conclude that an in-court charge of $40 per hour and a charge of $20 per hour for office and investigative work is appropriate. These rates would be in line with the customary charges which the court knows to prevail locally. We also are convinced that no more than 60 hours of office and investigative work may be regarded as reasonably necessary in preparation and thus are fairly compensable. Hence, we determine a proper counsel fee in this case to be $1,380, calculated as follows:

$40 x 4.5 = $180.00
$20 x 60 = 1200.00 [2]

We have also been advised by the parties that neither side seeks further relief in this action, excepting only plaintiffs' request that the preliminary injunction heretofore entered be made permanent by its terms. Accordingly, entry of a final decree at this time would be appropriate.

---

2. We exclude from calculations of plaintiffs' counsel 15 hours for time claimed for briefing his right to obtain attorney fees, reduce by 10 hours the time required for research as well as 8 hours of travel time between Greenville and Greenwood.