**Thomas J. SWICKER**

v.

**WILLIAM ARMSTRONG & SONS, INC., William Armstrong.**

**Civ. A. No. 76–1999.**

United States District Court, E. D. Pennsylvania.

Jan. 17, 1980.

---

. Helen H. Cutner, Michael K. Simon, Sidkoff, Pincus, Greenberg & Green, Philadelphia, Pa., for plaintiff.

Warren M. Laddon, John E. Krampf, Morgan, Lewis & Bockius, Philadephia, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

VanARTSDALEN, District Judge.

Pursuant to the Civil Rights Attorney's Fee Awards Act of 1976, 42 U.S.C. § 1988, plaintiff seeks attorneys' fees incurred in the successful litigation of this civil rights action. He brought the action in 1976 against his employers, alleging racial discrimination in his firing. His attorney at the time, Helen Cutner, filed the complaint, basing the claim solely upon Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Thereafter, she conducted discovery, responded to a defense motion for summary judgment, and completed most other pretrial matters before withdrawing from the case, and from the private practice of law in June of 1978. Plaintiff's representation was then taken over by Michael K. Simon, of the Philadelphia law firm Sidkoff, Pincus, Greenberg and Green, who conducted the nonjury trial of the case. At the conclusion of the plaintiff's case in chief, defendants moved for judgment on the basis that plaintiff's evidence failed to establish a Title VII jurisdictional requirement that the defendant employer must

have had "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b). The motion was taken under advisement, pending analysis of the many pertinent documentary exhibits. At the end of the trial, Mr. Simon, justifiably concerned that this jurisdictional requirement might not have been met, moved to amend the complaint to assert, without any additional factual allegations, a claim under section 1981 of the Civil Rights Act. I permitted this amendment, by memorandum opinion and order dated August 29, 1979. Subsequently, I found defendants liable for plaintiff's improper discharge under section 1981, but not under the Title VII theory originally asserted, due to insufficient evidence to establish the noted jurisdictional requirement. Damages were assessed against the corporate defendant in the amount of $7,577.50, with the individual defendant jointly and severally liable for $3,085 of that amount. Mr. Simon and Ms. Cutner now petition this court for total attorneys' fees of almost $55,000.00, approximately seven times the total amount of their client's recovery.

█ Congress has provided that a successful plaintiff in a section 1981 action may recover "a reasonable attorney's fee" from the defendant. 42 U.S.C. § 1988. In the third circuit, however, the simplicity of this provision is somewhat belied by the complexity of its application. Probably the most concise and accurate statement of the process mandated by the court of appeals may be found in Judge Garth's concurring opinion in *Hughes v. Repko*, 578 F.2d 483, 492 (3d Cir. 1978). He perceived four separate levels of inquiry in determining a reasonable attorney's fee in cases not involving an equitable or common fund. First, the court must determine the "lodestar," consisting of the number of hours reasonably spent multiplied by a reasonable hourly rate. Second, the court must determine whether the lodestar should be increased to account for the contingent nature of the case, and third, whether it should be either increased or decreased because of the quality of advocacy. Finally, the court may

make what is cryptically referred to as a "post-*Lindy* discretionary adjustment," in light of "all factors relevant to the reasonableness of the award, as well as factors derived from the substantive purposes of the statute under which the fee is awarded." *Id.*

█ The first three of these levels of inquiry are referred to collectively by Judge Garth as the "*Lindy* amount," a reference to the Third Circuit Court of Appeals' seminal decisions in *Lindy Brothers Builders, Inc. v. American Radiator and Standard Sanitary Corp.*, 487 F.2d 161 (1973) ("*Lindy I*"), and *Lindy Brothers Builders, Inc. v. American Radiator and Standard Sanitary Corp.*, 540 F.2d 102 (1976) ("*Lindy II*"). Those cases concerned the payment of attorneys' fees out of a common fund, *i. e.*, where attorneys' fees as well as all general damages come out of a single fund created by the defendants, so that an upward limit is placed on the amount of money available for attorneys' fees by the size of the fund itself. By contrast, in civil rights cases, attorneys' fees are awarded separately pursuant to statute, so that the amount of damages assessed against the defendant places no inherent upward limit on the amount of attorneys' fees to be awarded. It was perhaps out of concern for the possibility that attorneys' fees might be awarded in amounts totally disproportionate to the actual amount of damages awarded that the *Hughes* court added to the *Lindy* formulation a final means of determining overall reasonableness—the so-called "post-*Lindy* discretionary adjustment," the scope of which will be hereafter examined.

█ It was the *Lindy I* court that first spawned the concept of the lodestar—the basic value of the attorneys' services, which is then transformed into a "reasonable" fee by means of a subsequent series of adjustments. In determining the number of hours that make up the lodestar, the *Hughes* court advises that it is appropriate to consider only those hours actually devoted to claims that ultimately prove successful. Time devoted to unsuccessful claims is

compensable only to the extent that the resulting work product also supports the successful claims. Moreover, the court indicates that whenever there is such an overlapping of time devoted to successful and unsuccessful claims, the trial court should undertake an "analyzed allocation of hours" between the two categories of claims. 578 F.2d at 487. The petitioning party is required to aid the court in this determination by providing "some fairly definite information as to the hours devoted to various general activities, e. g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e. g., senior partners, junior partners, associates." *Lindy I, supra* at 167.

 After it has been determined which hours are "reasonably supportive" of the successful claims, it must be determined whether it was "reasonably necessary to spend that number of hours" in support of those claims. *Hughes, supra* at 487. One factor in determining the reasonable necessity of the time spent, according to the *Hughes* court, is the simplicity of the case. The court rejected the lower court's determination that the proper time to weigh the simplicity of the issues is after the lodestar has been calculated:

> The simplicity of the issues involved should be reflected in the court's determination of the hours reasonably devoted to the successful claims, a determination that must be made in arriving at the lodestar itself. Any other approach would penalize attorneys regardless of the number of hours reasonably devoted to successful claims.

578 F.2d at 487. The meaning of this passage is, it seems, not that an exceptionally simple case calls for a corresponding reduction in the number of hours allowed, but that when the issues are simple, the hours allowed should not be more than would be reasonably necessary to litigate them. The court apparently intended that no attorney should be penalized just for taking a straightforward uncomplicated case. Thus, in order to have any effect on the size of a fee award, a finding that the case is exceptionally simple must be accompanied by a finding that the number of hours claimed . exceeds the number that should reasonably have been devoted to such a simple task.[1]

[6, 7] Next, it is necessary to compute the other component of the lodestar—the reasonable hourly rate. Obviously, an attorney's normal hourly billing rate is not necessarily reasonable. *See Baughman v. Wilson Freight Forwarding Co.,* 583 F.2d 1208 (3d Cir. 1978). However, since the court of appeals has stated that "[t]he value of an attorney's time generally is reflected in his normal billing rate," it might often be appropriate to use that normal rate as a starting point in determining what rate is a "reasonable one in light of all the circumstances of the litigation." *Id.* at 1217, *quoting Lindy I, supra* at 167. A major factor in this determination is, of course, the quality of the plaintiff's attorneys, their overall "experience, knowledge and legal talent." *Id.* at 1216–17, *quoting Lindy II, supra* at 117. The *Lindy II* court was careful to distinguish such consideration of the quality of the attorneys' work in general, from consideration of the quality of the attorneys' work in the particular case for which attorneys' fees are sought: the former is a lodestar determination while the latter may require a post-lodestar adjustment. 540 F.2d at 117. In determining what hourly rates reasonably correspond to an attorney's level of expertise, it may be helpful to make a comparison to rates awarded by other courts under similar circumstances. *Meisel v. Kremens, supra,* 80 F.R.D. at 426. The resulting hourly rate should be adjusted to

---

1. An appropriate measure of the simplicity of a case may be found in *Meisel v. Kremens,* 80 F.R.D. 419, 425 (E.D.Pa.1978) (Higginbotham, Circuit Judge, sitting by designation). Judge Higginbotham stated there that a legal issue may be said to be complex where it was "unsettled when the complaint was filed [or] difficult to demonstrate in the context of the facts," *id., quoting Latham v. Chandler,* 406 F.Supp. 754 (N.D.Miss.1976), while a factual issue may be said to be complex when its proof requires "diligent and rather prodigious effort." *Id., quoting Beazer v. N. Y. City Transit Authority,* 558 F.2d 97 (2d Cir. 1977). It might fairly be said that a case that is entirely devoid of such complexity is a simple case.

reflect variations in the type of work performed; as the court of appeals advises, the trial court "should scrutinize the fee petition to determine what tasks were ministerial or clerical in nature, and that therefore should not be compensated at the same rate as legal services." *Baughman, supra* at 1217. It is also appropriate

> to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it.

*Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717 (5th Cir. 1974). The rate should also reflect whether the work was performed by the attorney applicant or by junior partners, associates or paralegals. *Id. See White v. Beal,* 447 F.Supp. 788, 797 (E.D.Pa.1978). The final hourly rate is then multiplied by the reasonable number of hours to arrive at the lodestar figure.

■ An adjustment to the lodestar may then be made for the contingency factor. The lodestar may be increased where the trial court is "impressed with the contingent nature of the case," *i. e.,* with the difficulty of establishing liability. *Hughes, supra* at 491 (Garth, J., concurring). No downward adjustment of the lodestar, however, may be made for the contingency factor, even if the trial judge is singularly unimpressed with the contingent nature of the case. *Id.* at 487–88.

Further adjustment, upward or downward, may then be made on the basis of the quality of the attorneys' work in conducting the particular litigation in question, in order "to take account of an unusual degree of skill, be it unusually poor or unusually good." *Lindy I,* 487 F.2d at 168. In making this inquiry into the quality of the attorney's work, the district court should simply focus upon whether "the lawyer discharged the professional burden undertaken with a degree of skill above or below that

expected for lawyers of the caliber reflected in the hourly rates." *Lindy II,* 540 F.2d at 118. The *Lindy II* court stated that in making this determination, the district court may consider, *inter alia,* two factors: (1) the extent to which the relief granted to the plaintiff exceeded or fell short of the relief sought, as evidenced, for example, by a comparison of the actual damages recovered with the potential money damages available; (2) the extent to which the professional methods of the attorneys either expedited or delayed the proceedings.

■ The resulting adjusted lodestar represents the limit of the trial court's inquiry in cases, like *Lindy,* involving the payment of attorneys' fees out of a common fund, and thus has been referred to as the "*Lindy* amount." *Hughes, supra* at 491 (Garth, J., concurring). In cases involving the award of attorneys' fees pursuant to a statute, however, there are two additional steps. First, it is appropriate to calculate some allowance for the time spent by the attorneys "in preparing the fee petition, to the extent that time was reasonably necessary to obtaining a reasonable fee award." *Prandini v. National Tea Co.,* 585 F.2d 47, 54 (3d Cir. 1978). The value of such time should be added on after the contingency and quality adjustments have been made, upon the reasoning that "[s]uch hours are incurred apart from the prosecution of the main case, and it is upon the nature of the main case and the quality of the work done on it that adjustments to the lodestar are based." *Baughman, supra,* 583 F.2d at 1219.

Second, under the rubric of the "post-*Lindy* discretionary adjustment," the trial judge is empowered to increase or decrease the *Lindy* amount "based on any rational factors that are relevant to the particular case." *Id.* at 492. The purpose of this adjustment, as stated in the *Baughman* case, is "to insure that the fee is no more than is reasonably warranted by the circumstances and by the purposes" of the applicable laws. 583 F.2d at 1219. When such an adjustment is made, however, the reasons for it "must all be articulated and

supported by the record." *Hughes, supra* at 492; *Baughman, supra* at 1219.

There are many appropriate considerations in determining the "reasonableness" of a fee. The case of *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974), cited with approval in the legislative history of the Civil Rights Attorney's Fee Awards Act of 1976, enumerates a dozen such factors, including the time and labor required, the skill needed to present the case, the customary fee for similar work, and the amount of damages or other relief obtained for the plaintiff. *H.Rep.No.*94–1558, 94th *Cong., 2d Sess.* 8 (1976). *Accord, S.Rep.No.*94–1011, 94th *Cong., 2d Sess.* 6, *reprinted in* [1976] *U.S.Code Cong. & Admin.News,* pp. 5908, 5913. *See Hughes, supra* at 488 n.7. Most of these factors will already have been taken into consideration in computing or adjusting the lodestar, *id.* at 488, but several are appropriate considerations only at this later stage. For example, the court of appeals emphasized that the fee to be awarded should be evaluated in light of the important substantive goals of the Civil Rights Act. *Id.* at 488–89 & n.8. A larger fee may be justified where the results obtained by the petitioning attorneys have helped to further important civil rights goals, as might be the case where a successful class action corrects across-the-board discrimination against a large class. *See Johnson, supra* at 718. The opposite, of course, would be true where the verdict affects only an individual plaintiff complaining of an isolated act of individual discrimination. *Keown v. Storti,* 456 F.Supp. 232, 242 (E.D.Pa.1978). *See Hughes, supra* at 492 n.5 (Garth, J., concurring). Another significant aspect of reasonableness would be whether the attorney has successfully advanced a novel theory or interpretation, *i. e.,* whether the case has produced new law which might serve the public interest in the future through the principle of *stare decisis. Id.; Keown v. Storti,*

*supra* at 242. If this is not the case, a reduction may be justified. As noted earlier, the district court is required to specify each of its reasons for making a post-*Lindy* discretionary adjustment. At the same time, however, it is clear that the trial judge is vested with considerable discretion in making such an adjustment and in choosing his reasons. *See Hughes, supra* at 490 (Rosenn, J., concurring).

Plaintiff's two attorneys have filed separate fee petitions covering their separate periods of representation. Ms. Cutner seeks compensation for 169.75 [2] hours at $100 per hour, plus a 50% increment for the contingent nature of the case and the quality of her work, for a total fee of $25,688.00. Mr. Simon seeks compensation for 198.5 [3] hours of his own time at $90 per hour, plus 34 hours logged by his associate, Neil Morris, at $50 per hour, plus an overall 50% increment for contingency and quality, for a total fee of $29,212.50.

 It is first necessary, according to the foregoing legal analysis, to separate the hours that actually contributed to the success of the section 1981 claim from the hours that furthered only the unsuccessful Title VII claim. To do this, it is necessary to have some understanding of the interrelationship between the two statutory provisions, some appreciation of the extent to which the proof required for the one might differ from that required for the other. Both provisions serve the same civil rights goals, and are equally available to persons complaining of racial discrimination in employment. Title VII, however, was enacted approximately a century after section 1981, apparently out of concern that the civil rights laws of 1870 had accomplished so little. *Smiley v. City of Montgomery,* 350 F.Supp. 451, 456 (M.D.Ala.1972). Its provisions are more thorough and specific than the simple, naked prohibition of discrimina-

---

**2.** Actually Ms. Cutner claims 171.25 hours, but this figure is apparently the result of an arithmetical error on her part. The true total of the hours she lists in her fee petition is 169.75 hours.

**3.** Mr. Simon's arithmetic is, like Ms. Cutner's, slightly flawed. He claims 197.5 hours, when the true total of his claimed hours is actually 198.5.

tion contained in section 1981. Such clarity and precision surely facilitate the administrative enforcement of Title VII, as Congress intended, but at the same time, they inevitably tend to narrow the scope of the statute, through the many jurisdictional prerequisites specified therein. Indeed, the courts have recognized that the substantive protections and relief available under both statutes are coextensive. *Carrion v. Yeshiva University*, 535 F.2d 722 (2d Cir. 1976); *Commonwealth of Pa. v. Local Union 542, Int'l Union of Operating Engineers*, 469 F.Supp. 329 (E.D.Pa.1978); *Lee v. Bolger*, 454 F.Supp. 226 (S.D.N.Y.1978); *Boles v. Union Camp Corp.*, 57 F.R.D. 46 (S.D.Ga. 1972). On the other hand, there seems to be general agreement that section 1981 is in practice the more broadly applicable, since it is not subject to the many procedural barriers and administrative limitations of Title VII. *Jenkins v. Blue Cross Mutual Hospital Insurance Co.*, 538 F.2d 164 (7th Cir.), *cert. denied*, 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976); *Alpha Portland Cement Co. v. Reese*, 507 F.2d 607 (5th Cir. 1975); *Guerra v. Manchester Terminal Corp.*, 498 F.2d 641 (5th Cir.), *rehearing denied*, 503 F.2d 567 (1974); *Strozier v. General Motors Corp.*, 442 F.Supp. 475 (N.D.Ga.1977), *appeal dismissed*, 584 F.2d 755 (5th Cir. 1978); *Jones v. United Gas Improvement Corp.*, 383 F.Supp. 420 (E.D. Pa.1974). Courts in some circuits view Title VII as limiting to some extent the availability of redress under section 1981; such courts treat section 1981 as a kind of last resort, available only after the complainant has exhausted his administrative remedies, or at least demonstrated a good reason for his failure to exhaust. *See Waters v. Wisconsin Steel Works of International Harvester Co.*, 427 F.2d 476 (7th Cir. 1970); *Battle v. National City Bank of Cleveland*, 364 F.Supp. 416 (N.D.Ohio 1973); *Tramble v. Converters Ink Co.*, 343 F.Supp. 1350 (N.D.Ill.1972). In this circuit, however, as District Judge Green has stated: it is regarded as "well established that exhaustion of Title VII administrative remedies is not a jurisdictional prerequisite to a federal district court suit charging discrimination in violation of § 1981." *Henry v. Schlesinger*, 407 F.Supp. 1179, 1190 (E.D.Pa.1976).

The upshot of this rather inconclusive foray into substantive federal civil rights law is that plaintiff's attorneys, in being awarded fees for the successful section 1981 claim, should not receive fees for their representation of the plaintiff before the EEOC or the Pennsylvania Human Relations Commission (PHRC), or for other work that did nothing more than unsuccessfully attempt to satisfy the procedural and jurisdictional requirements of Title VII. In terms of Ms. Cutner's representation, this means a total reduction of 39.5 hours from the 169.75 hours claimed in her fee petition, for time spent in initial proceedings before the PHRC, in preparing a brief in opposition to defendants' motion for summary judgment on procedural Title VII grounds, and in preparing affidavits and a stipulation in connection with such motion.[4] Simi-

---

4. The specific breakdown of the hours excluded from Ms. Cutner's application follows:

| Date | Activity | Hours |
|---|---|---|
| 1/28/76 | Telephone conferences—Lawyer Reference and PHRC | 1.5 |
| 2/24/76 | Meeting with PHRC—Review file and briefed on case status | 4. |
| 3/25/76 | Prepare for meeting of PHRC with client | 2. |
| 4/2/76 | Meeting with PHRC | 2.5 |
| 11/15/76 | Interview client and prepare for S/J | 3.5 |
| 12/20/76 | Research possibility of S/J | 1. |
| 6/1/77 | Review defendants' S/J motion | .5 |
| 6/10/77 | Research [apparently S/J motion] | 5.75 |
| 6/2/77 | Review defendants' S/J motion | 6. |
| 6/3/77 | Telephone defense counsel reextension of time—prepare stipulation | 0.75 |
| 6/9/77 | Review and file stipulation | 0.25 |
| 6/12/77 | Write brief | 5.5 |
| 6/13/77 | Finalize affidavits and final draft brief | 4.75 |
| 6/14/77 | Correct and file brief and supporting papers | 1.5 |
| | | 39.50 |

larly, the 198.5 hours claimed by Mr. Simon in his fee petition will be reduced by the 19.5 hours that he spent conferring with Donald Johnson of the PHRC and preparing him as a witness (his testimony was precluded at trial because counsel neglected to include him as a witness in the pretrial memorandum), and researching and preparing the motion to amend the complaint subsequent to the completion of the trial to add a claim under section 1981,—effort that would have been unnecessary had the claim been originally asserted as it should have been.[5] Likewise, of the 34 hours claimed for Mr. Simon's associate, Neil Morris, 9 hours will be deducted as being time spent on the motion to amend.[6] He will be allowed compensation for 25 hours.

■ As to the attorneys' other activities and services which were, when rendered,

intended to further only the Title VII claim originally filed, because of the substantive overlapping of the provisions of Title VII and section 1981, such services will be deemed to have simultaneously, although unintentionally, assisted plaintiff's later-added section 1981 claim. Thus they are compensable.

■ No direct deduction from allowable hours will be made from the number of compensable hours spent by either Mr. Simon or Ms. Cutner for duplication of effort caused by the mid-litigation change of counsel. Certainly Mr. Simon should not be penalized for carrying out his professional responsibility to review and thoroughly acquaint himself with the existing file prior to trial. Moreover, it would be difficult to calculate fairly a reduction of Ms. Cutner's hours, since no time directly spent by her

---

Although some of the time deducted may arguably have advanced the later filed section 1981 successful claim, there is undoubtedly other claimed time that has been allowed that in reality only served the unsuccessful Title VII

claim. Clearly, some degree of imprecision is unavoidable in making such a comprehensive allocation of hours.

5. The specific breakdown of the hours excluded from Mr. Simon's application follows:

| Date | Activity | Hours Claimed | Hours Excluded |
|------|----------|---------------|----------------|
| 7/3/79 | Conference with plaintiff, preparation of witness Smith for trial, telephone PHRC and witness D. Johnson, telephone W. Laddon, Esq., re trial witnesses | 6. | 2. |
| 7/5/79 | Telephone PHRC, D. Johnson, telephone W. Laddon, Esq., re: defendants' request for continuance, etc., conference W. Greenberg, Esq., subpoena trial witness, W. Armstrong, D. Johnson and D. Smith. | 2. | 0.5 |
| 7/12/79 | Trial, re-subpoena of defendant; research re-subpoena of defendant, preparation of D. Johnson, PHRC for trial, defendants' motion to dismiss | 12. | 4. |
| 7/12/79 | Research, drafting and preparation of motion to amend complaint to add § 1981 count | 5. | 5. |
| 7/13/79 | Trial, file motion to amend | 8. | 2. |
| 7/19/79 | Preparation and research FF, CL, Brief, Motion to amend supporting memo, conference with Neil Morris, Esq. | 2. | 1. |
| 7/23/79 | Research, draft motion to amend, supporting memo. | | 1.5 |
| 7/24/79 | Research and draft Supp. Memo–Motion to Amend | | 1. |
| 7/26/79 | Draft Motion Amend–Supp. Memo | | 2. |
| 9/7/79 | Review Court Opinion granting motion to amend, telephone W. Laddon, Esq. | | 0.5 |
| | | | 19.5 |

6. Mr. Morris actually shows 12 hours spent on the motion to amend, as follows: 7/12—3 hours; 7/24—5 hours; 7/25—4 hours. However, because Ms. Cutner had not originally included a section 1981 claim, a routine motion to amend pretrial would have been required by Mr. Simon's office. Allowance of 3 hours by an associate is more than ample for such a motion.

relates to any duplication. *See Wehr v. Burroughs Corp.*, 477 F.Supp. 1012, No. 76–581 (E.D.Pa.1979, Huyett, J.). However, in making a "post-*Lindy* discretionary adjustment," the change of counsel will be given some weight, as discussed later.

There will be no direct deduction from the allowable hours for hours that were not "reasonably necessary" to support the successful claim. Although it seems to me that this action was, for the most part, as factually and legally uncomplicated as any employment discrimination action could be (except for the last-minute amendment problems that plaintiff's attorneys brought upon themselves), the law of the third circuit, as discussed *supra*, does not appear to permit a corresponding reduction in the number of hours claimed, absent a finding that such total hours were not "reasonably necessary." There is no clear indication, and defendants do not presently argue, that the total number of hours claimed, less the hours determined *supra* to have been supportive of only the unsuccessful Title VII claim, is any more than was reasonably necessary to bring about the success of the section 1981 claim. It should be noted, however, that defendants do challenge the reasonable necessity of the thirty hours that Mr. Simon claims to have spent preparing his fee petition. This challenge will be discussed hereafter, after determination of the *Lindy* lodestar.

Having determined the allowable hours,[7] the next step is to determine a reasonable hourly rate. Ms. Cutner requests an award of $100 per hour. Her petition, however, does not state what her normal billing rate was while she was a practicing attorney. Mr. Simon seeks, and claims as his normal billing rate, $90 per hour, and $50 per hour for his associate, Neil Morris. Neither petition gives any suggestion as to the respective attorney's "historical" billing rates during the approximate 3½ years of this litigation. *See Aamco Automatic Transmissions, Inc. v. Tayloe*, 82 F.R.D. 405 (E.D.Pa.1979).

Ms. Cutner and Mr. Simon are similarly experienced attorneys. At the time Ms. Cutner undertook representation of the plaintiff, she had been practicing law for about nine years. At the time Mr. Simon took over, he had been practicing for eight years, including one year as a law clerk to a federal district court judge. Both attorneys have worked for highly respectable Philadelphia law firms, and have appreciable legal experience not just in the area of employment discrimination, but also in securities, antitrust and class action litigation. Both, I believe, are therefore entitled to the same hourly rate. Just what that rate should be may appropriately be determined by reference to rates awarded in similar or comparable cases.

In *Keyes v. School District No. 1, Denver, Colorado*, 439 F.Supp. 393, 413 (D.Colo. 1977), the district court surveyed eleven recent civil rights cases in which rates were awarded ranging from $5 to $70. In *Torres v. Sachs*, 69 F.R.D. 343 (S.D.N.Y.1975), an attorney seven years out of law school, with private firm experience and considerable expertise in the area being litigated, was awarded an hourly rate of $75.00. A similarly experienced attorney was awarded $65 per hour in *Preston v. Mandeville*, 451 F.Supp. 617 (S.D.Ala.1978), where the court relied on half a dozen recent fifth circuit cases granting hourly rates ranging from $20 to $60.00. In *Schmidt v. Schubert*, 433 F.Supp. 1115, 1118 (E.D.Wis.1977), the court awarded an hourly rate of $45.00, "the acknowledged prevailing hourly rate in Wisconsin."

Cases decided in this circuit under *Lindy*, however, are probably more germane to the present fee determination. In *Meisel v. Kremens, supra*, a case involving a fee petition under section 1988, Judge Higginbotham surveyed a number of comparable cases and found maximum hourly rates between $40 and $75.00, depending on the experience of counsel. 80 F.R.D. at 425–26. *Meisel* concerned the civil rights of mental patients, and Judge Higginbotham observed

---

7. There will be some additional deductions from the claimed hours, because such work was ministerial and could well have been done by paralegal or secretarial employees.

that the petitioning attorney, although only three years out of law school, had "become recognized as an expert on the legal aspects of the mental health field and [had] been on the frontier of some of the most significant litigation on this subject in this district." *Id.* at 422. Nevertheless, he denied the requested $90 hourly rate, and held that a $60 rate was more reasonable, "in light of [the attorney's] experience and in relationship to awards made in similar litigation." *Id.* at 427. In *Commonwealth of Pennsylvania v. O'Neill*, 431 F.Supp. 700 (E.D.Pa. 1977), Judge Fullam found "fair and reasonable" a rate of $40 per hour for a full professor at Temple Law School representing civil rights plaintiffs "on some difficult legal issues" in a "highly technical area." He found also that it was reasonable for members of a large and highly respected Philadelphia law firm to recover statutory attorneys' fees at a rate of two-thirds their normal billing rate, resulting in maximum rates for the firm's senior partner of $80.40 per hour and $36.85 for associates. On the basis of the *O'Neill* opinion, I concluded in *White v. Beal*, 447 F.Supp. 788 (E.D.Pa. 1978), that an hourly rate of $50 was reasonable for an attorney who had been practicing law for seven years and was in a position comparable to a junior partner in a private law firm, while $40 was appropriate for an attorney with five years experience in a position comparable to an experienced associate in a private firm. In *Willett v. Chester Water Authority*, 447 F.Supp. 967 (E.D.Pa.1978), Judge Bechtle determined that the $50 and $75 rates requested by plaintiff's two attorneys might have been reasonable for counsel having "superior knowledge and experience, as well as many years at the bar," but that where the attorneys possessed simply a "high degree of knowledge and experience but presumably few years at the bar," respective rates of $30 and $50 were more appropriate. *Id.* at 427. Finally, I should refer, for what it is worth, to a comprehensive 1975 survey of attorneys' fees awarded in a variety of district court cases. *See Helfman*, "Court Awarded Attorneys' Fees: A Statistical Survey of One Hundred and Forty Recent District Court Cases Involving Attorneys' Fees." (Project submitted to the faculty of Antioch School of Law, 1975), cited in Berger, *Court Awarded Attorneys' Fees: What is "Reasonable"?* 126 U.Pa.L.Rev. 281, 310 (1977). The mean hourly rate awarded in Title VII cases was $40, while the average rate awarded in civil rights cases in general was $38.00. In considering these figures, of course, allowance should be made for intervening years of extensive inflation.

■ Based on the foregoing analysis, I conclude that $60 per hour for the allowable hours spent by Ms. Cutner and Mr. Simon from the beginning of this action in 1976 to its conclusion is a reasonable hourly rate. Mr. Morris will be allowed compensation at the rate of $40 per hour.

■ To the extent that certain services performed by the attorneys were ministerial or clerical in nature, or might reasonably have been performed by a paralegal, they should be compensated at a lower rate. I determined in 1978 in *White v. Beal, supra,* that a reasonable rate for paralegal and other research assistance work would be between $10 and $20 per hour. On that basis, I conclude today that a reasonable rate for a mixture of paralegal and clerical work is $15 per hour. That is the rate, therefore, that I will apply to the 33.75 hours claimed by Ms. Cutner and the 6.5 hours claimed by Mr. Simon for services that might fairly be categorized as paralegal or clerical.[8]

8. As to Ms. Cutner, the hours so treated are as follows:

| Date | Service | Hours |
|---|---|---|
| 2/18/77 | Review Interrogs. and Requests and Prepare Interrogs. and Request | 6.75 |
| 2/28/77 | Prepare Interrogs. for response | 1.75 |
| 2/28/77 | Prepare Answers & Interrogs. (Objs.) | 2.25 |
| 3/5/77 | Prepare Answers to Interrogs. from documents | 2.00 |

Thus, the unadjusted lodestar figures are as follows: Ms. Cutner, $5996.25; Mr. Simon, $8647.50; and Mr. Morris, $1000.00, for a total of $15,643.75, which includes compensation for ministerial and/or clerical work performed by the attorneys.[9]

| Date | Service | | Hours |
|------|---------|---|-------|
| 3/18/77 | Review and file discovery response | | .75 |
| 3/30/77 | Review docs. and prepare summary | | 2.00 |
| 4/13/77 | Review and serve Motion to Compel | | 1.50 |
| 4/20/77 | Review for doc. exam. and exam. docs. | | 5.50 |
| | | | 22.50 |
| 5/13/77 | Correct, prepare and file supplemental response to Interrogs. | | .75 |
| 6/18/77 | Prepare supple. Interrog. response | | 1.50 |
| 6/20/77 | Review, correct and serve supplemental response | | 2.25 |
| 6/22/77 | Contact possible witnesses | | 4.50 |
| 6/23/77 | Contact addl. possible witnesses | approx. | 1.00 |
| 6/27/77 | Correct, file pretrial memo | | .50 |
| 8/11/77 | Review and file supplemental pretrial memo | | .75 |
| | Total | | 33.75 |

As to Mr. Simon, the hours so treated are as follows:

| Date | Service | Hours (approximate) |
|------|---------|---------------------|
| 7/5/79 | Subpoena trial witnesses | 1.00 |
| 7/7/79 | Trial preparation, mark and copy trial exhibits and list of exhibits | 1.50 |
| 7/9/79 | Telephone other prospective witnesses | 4.00 |
| | Total | 6.50 |

9. Lodestar calculations are as follows:

1. Ms. Cutner: 169.75 hours claimed at $100/hour $16,975.00

Deductions (hours):

| | |
|---|---|
| Work on unsuccessful Title VII claim | 39.5 |
| Clerical and/or ministerial | 33.75 |
| Fee petition application | 5. |
| Total deductions | 78.25 |

Total hours allowed (169.75 claimed minus 78.25): 91.50 hours at $60/hour $ 5,490.00
Plus 33.75 hours clerical and/or ministerial at $15/hour 506.25
Total lodestar to Ms. Cutner $ 5,996.25

2. Mr. Simon: 198.5 hours claimed at $90/hour $17,865.00

Deductions (hours):

| | |
|---|---|
| Work on unsuccessful Title VII claim and/or motion to amend | 19.5 |
| Clerical and/or ministerial | 6.5 |
| Fee petition preparation | 30. |
| Total deductions | 56.0 |

Total hours allowed (198.5 claimed minus 56.0): 142.5 at $60/hour $ 8,550.00
Plus 6.5 hours clerical and/or ministerial at $15/hour 97.50
Total lodestar to Mr. Simon $ 8,647.50

3. Mr. Morris: 34 hours claimed at $50/hour $ 1,700.00

Deduction: 9 hours preparing and researching motion to amend complaint

Total hours allowed (34−9 = 25) at $40/hour $ 1,000.00

The lodestar will not be increased on the basis of the contingent nature of the case. There is, of course, some contingency of success in all cases of disputed liability, and an attorney's fee can be recovered, as a practical matter, only if the plaintiff is successful. Liability in this case depended on disputed factual issues, providing no exceptional trial risks, and requiring no more than normal trial preparation.

Claimants also assert, in seeking a 50% increment to the lodestar, that the high quality of their work warrants a substantial increment. I do not find the quality of the work outstanding, especially in light of Ms. Cutner's and Mr. Simon's extensive experience and knowledge in the field of racial discrimination in employment—factors that have already been taken into consideration in setting the hourly rate. The initial failure to assert, or at least to attempt a pretrial amendment of the complaint to assert a section 1981 claim, came perilously and needlessly close to a fatal error. It caused all involved in the case to expend a great amount of additional time and effort. Similarly, the failure to assert any claim before either the PHRC or the EEOC against the individual defendant, William Armstrong, is not indicative of exceptional quality. When defense counsel, at the close of plaintiff's case in chief, raised the issue of the failure of proof on the jurisdictional question, plaintiff's counsel was apparently unprepared to meet the issue, and thereafter expended great effort in unsuccessfully attempting to extrapolate from the record the necessary proof. Much of the time allowed in preparing of post-trial briefs and proposed findings and conclusions was exerted in this effort. I am personally convinced that had counsel properly prepared for the trial, it could have been proved, and perhaps even agreed to by stipulation, that the corporate defendant had, in fact, employed the requisite number of employees for the requisite period of time. Had this been done, it is unlikely that an amendment would have been necessary, at least as to the corporate defendant. In any event, it should be noted that proof as to the number of employees of defendants was subject to exact determination.

Another serious deficiency was the failure to list all potential witnesses on the pretrial memorandum filed by Ms. Cutner. No pretrial amendment was sought by Mr. Simon, even though in preparation for trial he knew that certain unnamed witnesses would be crucial to the presentation of his client's case.

█ I point out these avoidable problems and deficiencies not as personal criticism of counsel, but rather to articulate the reasons for my decision not to increase the lodestar figure to reflect the contingency factor or the quality of the work. Accordingly, no upward adjustment of the lodestar will be made, either in a dollar amount or a percentage increment.

The next step is to allow a reasonable sum for preparing the fee petition. Ms. Cutner asks an allowance of five hours time, which, although not immodest, is reasonable. However, if proper time records are maintained, much of the work in preparing a fee petition should be largely routine, scarcely justifying a charge of $60 per hour. Unfortunately, most fee applications reflect an inordinate amount of time and effort expended in attempting to justify a substantial increment to the lodestar figure. Such petitions frequently contain self-laudatory statements more fitting in a commercial advertisement than in a professional presentation.

█ Mr. Simon's petition undoubtedly took much longer to prepare, but, except for its itemization of the hours spent on various activities, was of no substantial benefit to me in establishing a reasonable fee. A trial judge should be presumed to be aware of the extent and quality of trial counsel's work without a long recitation of the hazards and pitfalls that trial counsel so skillfully circumvented. I recognize, of course, that the applicable case law seems to demand great detail in fee applications, and that a cautious attorney fears saying too little far more than saying too much. Nevertheless, when approximately 15% of

the time for which the attorney seeks compensation consists of preparing the fee application, one may wonder in whose interest the litigation is conducted. I will allow Ms. Cutner 5 hours and Mr. Simon 8 hours, or the respective sums of $300 and $480 for preparing the fee petitions. These amounts, when added to the fees calculated previously under the *Lindy II* analysis, yield a total of $16,423.75.

■ In this case I will make a downward "post-*Lindy* discretionary adjustment." In doing so, I consider the following factors:

The judgment and end results of this litigation have not appreciably furthered the important substantive goals of any of the civil rights acts. Although the litigation has vindicated important rights guaranteed to the plaintiff, it involves but one employee in a single employment situation. No class of employees was involved. There was no evidence of any general discriminatory employment practices by the employer. The litigation neither presented any novel legal situations nor produced any new law of any significance. It has not altered, either for better or worse, the existing body of employment discrimination law in any way that might, through the principle of *stare decisis,* affect the rights or liabilities of parties to future employment discrimination actions.

The attorneys' fees calculated in this case under the *Lindy* formula are more than twice the amount of damages awarded. This disproportion, of course, would not necessarily require a reduction of the fee award if it appeared, for example, that important public interests had been advanced beyond those of the immediate litigants. As Judge Rosenn observed in his concurrence in *Hughes,* at 490:

> There may be cases in which the damages awarded are slight, but which nonetheless serve important governmental policies. In such cases, if the attorney's hours are reasonable, the court may balance the small verdict with the important benefits produced by the litigation.

Absent such important benefits, however, the implication is that where damages are relatively small in comparison with the lodestar figure, a downward "post-*Lindy* discretionary adjustment" is appropriate.

As previously noted, although no reduction in the number of compensable hours will be made to account for the change of counsel, undoubtedly a certain amount of duplication of time and effort occurred. Also as previously noted, no express deduction from the lodestar has been made for various serious deficiencies in the pleading and pretrial stages of the case. However, these are additional factors that I conclude weigh in favor of a downward adjustment of the fee. Essentially, this was a simple employment discrimination case involving one employee. The attorneys who ultimately secured plaintiff his rights are entitled to adequate compensation, but it must be "reasonable" under all of the circumstances.

An appropriate "post-*Lindy* discretionary adjustment" in this case is to reduce the *Lindy* amount by one-third, making total fees of $10,949.22, still substantially in excess of the damages awarded.

Plaintiff will also be awarded costs incurred by his attorneys in prosecuting this action, pursuant to 28 U.S.C. § 1920. Ms. Cutner's total costs were $377.93, to which amount defendants offer no objection. Mr. Simon incurred $228.74 in costs, of which $22.78 was spent for "Miscellaneous—transportation, etc." Defendants properly object to this latter amount as not reimbursable under section 1920, and it will accordingly not be allowed. *See Skehan v. Board of Trustees of Bloomsburg State College,* 436 F.Supp. 657, 667 (M.D.Pa.1977). The remainder of Mr. Simon's costs, in the amount of $205.96, will be allowed.

■ Thus, defendants' total liability for attorneys' fees and costs in this case is $11,533.11. Defendants, however, have made one final argument in a recent letter to the court, concerning the apportionment

of liability for the plaintiff's fees between the corporate defendant and the individual defendant. They argue that since the individual defendant is not liable for the entire amount of the judgment, he should only be held liable for a proportionate share of the attorneys' fees. Defendants cite no cases in support of this argument, but seem to premise it simply upon notions of fairness. This is an insufficient basis for such a request. There is no indication in the present case that the attorneys' fees incurred by the plaintiff would have been any less if he had chosen to proceed only against the individual defendant, and as a result, the individual defendant could conceivably have been required to pay the entire amount of the fees herein determined. To hold him jointly and severally liable, with the corporate defendant, for the entire amount of this fee award works no injustice upon him, and indeed has the benefit of insuring that Congress's goal of awarding prevailing civil rights plaintiffs their reasonable attorneys' fees will not be frustrated simply by the impecuniousness of one of the defendants.

Obviously, under present third circuit law, the determination of reasonable attorneys' fees is a complicated and demanding process. The setting of the lodestar especially requires precise and thorough calculation, including close scrutiny of every one of hundreds, perhaps thousands, of hours logged by plaintiff's counsel. On the other hand, the "post-*Lindy* discretionary adjustment" seems to be an especially flexible and open-ended device, permitting consideration of virtually any factor that the court deems relevant and is willing to specify in support of its fee award decision. Such elements of exact precision in determining the lodestar and broad discretion in adjusting it, appear to be incongruous partners to be joined in this single enterprise. The latter is able to undo in a twinkling, in a reasonable but quite unscientific way, all of the careful calculations of the former. Such discretion, however, is a natural and appropriate by-

product of the standard of reasonableness that Congress wished to apply to the determination of statutory attorneys' fees, since reasonableness, insofar as it defies precise calculation by empirical data, invites an element of subjective judgment. It requires, beyond the juggling of figures, a fair and objective weighing of the many special circumstances of each case.

Toward this end, the Third Circuit Court of Appeals has formulated the approach set forth in *Lindy* and its progeny. This approach consists, as a practical matter, of at least six separate and discreet determinations: hours, hourly rate, contingency adjustment, quality adjustment, fee petition allowance and "post-*Lindy* discretionary adjustment." Under such an approach, the determination of a reasonable fee may often raise more complicated factual and legal issues and consume more judicial time and energy than the litigation of the merits of the case itself. This, in turn, may unfortunately create the impression, especially among the public, that the courts attach greater significance to the rights of attorneys to receive substantial fees than to the rights of litigants. It would be prudent, I believe, for trial courts to bear this possibility in mind in making statutory fee determinations, in order to best reconcile the teachings of the *Lindy* line of cases with Congress's simple goal of providing successful civil rights plaintiffs with "a reasonable attorney's fee."

I have attempted to determine a reasonable fee based on the dictates of the case law of this circuit. Nevertheless, I recognize that because of the broad divergence of the parties' views concerning the amount each thinks reasonable, and because of the broad discretion vested in the trial court by statute and case law to compromise that divergence, it is probable in this case, as in all fee determinations, that the results will not be entirely satisfactory to any of the attorneys or parties to the litigation.[10]

10. As a final irony, it should be noted that there has been a suggestion by counsel that both defendants are presently "judgment proof."

## ORDER

Upon consideration of plaintiff's petitions for attorneys' fees and costs, and all supporting and opposing memoranda of law, it is ORDERED that plaintiff be GRANTED attorneys' fees and costs pursuant to 42 U.S.C. § 1988 in the total amount of Eleven Thousand Five Hundred Thirty-three Dollars and Eleven Cents ($11,533.11), as follows:

For Helen Cutner, Esquire:

| | | |
|---|---|---|
| Attorney's fees | $4,197.52 | |
| Costs | 377.93 | |
| Total | | $ 4,575.45 |

For the firm of Sidkoff, Pincus, Greenberg & Green:

| | | |
|---|---|---|
| Attorney's fees (Michael Simon, Esq.) | $6,085.03 | |
| Attorney's fees (Neil Morris, Esq.) | 666.67 | |
| Costs | 205.96 | |
| Total | | $ 6,957.66 |
| **TOTAL AWARD** | | $11,533.11 |

Defendants shall be jointly and severally liable for these amounts.